Opinion issued April 15, 2010.

 



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-08-00835-CV

———————————

GEORGE A. YOUNG AND SHIRLEY YOUNG, Appellants

V.

Texas First
Bank, Appellee[1]



 



 

On Appeal from the 212th District Court

Galveston County, Texas



Trial Court Case No. 08CV0107

 



MEMORANDUM  OPINION

          Appellants,
George A. and Shirley Young, appeal from a final judgment rendered upon motions
for summary judgment and from a post-judgment order, rendered within the trial
court’s plenary power, awarding sanctions against the Youngs and to appellee,
Texas First Bank (“the Bank”).  We
determine whether (1) the trial court had jurisdiction over the Bank’s claims; (2)
the trial court erred in rendering summary judgment on the Bank’s claims for
attorney’s fees and rent; (3) the trial court erred in rendering a take-nothing
judgment on the Youngs’ cross claim for wrongful foreclosure and in declaring
the foreclosure of their home valid; and (4) the trial court abused its
discretion in ordering that the Youngs pay the Bank sanctions.  We affirm the judgment in part, reverse it in
part, and remand the case.  We further affirm
the sanctions order.

BACKGROUND

          In
2005, to purchase a home in Galveston (“the property”), the Youngs executed a
real estate note, payable to the Bank, for $525,000.  The note was secured by a deed of trust on
the property.  The note’s maturity date
was extended twice, the last extension being signed in March 2007.  

          The
Youngs filed for bankruptcy in June or July 2007, and that case was dismissed
with prejudice in July 2007; the dismissal order precluded refiling of bankruptcy
proceedings for six months.  The Youngs
defaulted on the note, after which the Bank posted the property for
foreclosure.  In September 2007 and October
2007, respectively, the Youngs filed second and third bankruptcy proceedings.  Both cases were dismissed in the months that
they were filed, but in the third case, the Bank sought and received an order
lifting any automatic stay that may have existed.  The Bank again posted a foreclosure sale
after the order lifting stay was rendered.

          For
various reasons, that foreclosure did not occur and was eventually reposted for
early January 2008.  In late December
2007, the Youngs sued for, and obtained, a temporary restraining order (“TRO”)
against the Bank to prevent the foreclosure. 
The Youngs eventually nonsuited that case, and the Bank reposted the
foreclosure for early February 2008.  On
February 4, 2008, the Youngs filed the instant suit against the Bank and Mynde
S. Eisen, the Bank’s counsel and the substitute trustee under the deed of trust,
seeking a TRO and temporary injunction to prevent the February
foreclosure.  The ensuing TRO precluded
the February foreclosure, which the Bank then reposted for March 4, 2008.  On February 12, 2008, the Bank counterclaimed,
suing for the outstanding balance on the note. 


          On
February 18, 2008, the parties entered into an agreed order dissolving the TRO,
precluding the Youngs from seeking further injunctive relief to stop the
foreclosure, and dismissing Eisen in her capacity as substitute trustee under
the deed of trust.  The Youngs nonsuited
their claims on March 17, 2008.

          Nonetheless,
the Youngs filed a fourth bankruptcy on February 29, 2008, just days before the
March 4 foreclosure.  On March 3, the
Bank filed an emergency motion to declare that no automatic stay was in
effect.  The Bank conducted the
foreclosure on March 4.  The bankruptcy
court later declared that the stay was not in effect at the time of the
foreclosure, and the bankruptcy case was dismissed in mid-March.  The Bank was the successful bidder at the
foreclosure, purchasing the property for the full amount remaining on the
note.  

          After
the Youngs failed to vacate the property, the Bank amended its counterclaim,
seeking “judgment for forcible detainer,” possession, rent, and attorney’s fees
and dropping its suit to collect on the note. 
The Bank eventually amended this counterclaim again, seeking possession
(citing the forcible-detainer statute), a declaration that the foreclosure sale
was valid and that the Bank was entitled to possession, a writ of possession,
and attorney’s fees.  The Youngs filed a
“cross claim” for wrongful
foreclosure, alleging that the foreclosure was void for having occurred at a
time when an automatic bankruptcy stay was in effect.  

          The Bank moved for traditional summary
judgment on its claims and for no-evidence summary judgment on the Youngs’
cross claim.  The trial court granted the
Bank’s motions and rendered a final judgment declaring that “the foreclosure
was valid to recover possession” and was not void or voidable; declaring that
the trustee’s deed from the sale not be set aside; awarding “immediate
possession” of the property to the Bank; awarding costs and attorney’s fees of
$27,500 to the Bank, along with $30,000 total in possible appellate attorney’s
fees; awarding past rent of $24,600 to the Bank and $4,100 in rent for each
month that the Youngs continued in possession; and rendering a take-nothing
judgment on the Youngs’ cross claim.  The
court set supersedeas at $700,000 and ordered immediate issuance of a writ of
possession.  The Youngs did not supersede
the judgment.

          The Youngs moved for new trial and for
reconsideration of the supersedeas.  The
trial court denied both motions.  When
the writ of possession finally issued
about a week later, the Youngs sought emergency relief in this Court, which was
denied, and then filed an emergency motion to vacate the writ and for sanctions
in the trial court.  The Bank responded
with its own motion for sanctions.  Upon
hearing, the court denied the Youngs’ motion and found it frivolous, granted
the Bank’s motion for sanctions, and sanctioned the Youngs in the amount of
$25,000.  The Youngs appeal both the
final judgment and the sanctions order.

JURISDICTION OVER FORCIBLE-DETAINER PROCEEDINGS

          In
their first issue, the Youngs contend that the Bank’s suit against them was one
for forcible detainer within the justice court’s exclusive jurisdiction, depriving
the district court of subject-matter jurisdiction over the Bank’s suit.

 

 

A.      The Law

          Whether
the trial court had subject-matter jurisdiction over some or all of the Bank’s
claims is a question of law that we review de novo.  Mayhew
v. Town of Sunnyvale, 964 S.W.2d 922, 928 (Tex. 1998).

          “‘The
procedure to determine the right to immediate possession of real property, if
there was no unlawful entry, is the action of forcible detainer.’”  Hong
Kong Dev., Inc. v. Nguyen, 229 S.W.3d 415, 432 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (quoting Rice v. Pinney, 51 S.W.3d 705, 709 (Tex.
App.—Dallas 2001, no pet.)).

          Justice
courts (and county courts, in appeal by trial de novo from the justice court) have
exclusive jurisdiction over proceedings for forcible detainer.  E.g., It’s the Berrys, L.L.C. v. Edom Corner,
L.L.C., 271 S.W.3d 765, 770 (Tex. App.—Amarillo 2008, no pet.); Rice,
51 S.W.3d at 713.  For this reason,
forcible-detainer proceedings cannot be brought in any court other than the
justice court.  See It’s the Berrys, 271 S.W.3d at 770 (holding that such suit
could not be maintained in district court). 

          Although
“a justice of the peace court has exclusive jurisdiction over forcible entry
and detainer actions under the Texas Property Code,” it “does not have
exclusive jurisdiction to determine the right of possession of real property, a
question which may be determined in a trespass to try title action for
instance.” Breceda v. Whi, 224 S.W.3d
237, 240 (Tex. App.—El Paso
2005, no pet.); McCloud v. Knapp, 507 S.W.2d
644, 647 (Tex. Civ. App.—Dallas 1974,
no writ).  This is because “‘a judgment of
possession in a forcible detainer action is a determination only of the right
to immediate possession and does not determine the ultimate rights of the parties to any other issue in controversy relating to the realty in question.’”  Hong
Kong Dev., 229 S.W.3d at 433 (quoting Lopez
v. Sulak, 76 S.W.3d 597, 605 (Tex. App.—Corpus Christi 2002, no pet.)) (emphasis in original).  Accordingly, “a forcible-detainer action is
cumulative of, not exclusive of, other remedies that a party may have.”  Id.
at 437; see Tex. Prop. Code Ann. § 24.008 (Vernon 2000) (“An eviction
suit does not bar a suit for trespass, damages, waste, rent, or mesne profits.”).  For this reason, “a forcible-detainer suit in
justice court may run concurrently with another action in another court—even if the other action adjudicates matters
that could result in a different determination of possession from that rendered
in the forcible-detainer suit.”  Hong Kong Dev., 229 S.W.3d at 437. 

          Because
justice courts lack subject-matter jurisdiction to adjudicate title to land, “[w]here
a claimed right of immediate possession necessarily requires resolution of a
title dispute, the justice court lacks subject matter jurisdiction.”  It’s
the Berrys, 271 S.W.3d at 770; see Tex. Gov’t Code Ann. 27.031(b)(4) (Vernon 2004).  If the justice court lacks subject-matter
jurisdiction to adjudicate the right to immediate possession for this reason,
then a forcible-detainer action may not be maintained in any court at that
time, although a party may proceed in another court with some other claim to
resolve title and possession.  See Breceda,
224 S.W.3d at 240; see also It’s the
Berrys, 271 S.W.3d at 770.

B.      Discussion

          In
its first-amended counterclaim, the Bank expressly alleged a claim seeking a
“judgment . . . for forcible detainer,” but also sought “judgment . . . for
possession of the Property.”  The Bank eventually
amended its counterclaim to remove any mention of “forcible detainer” while still
asserting a claim for “possession”; nonetheless, the Bank continued to cite the
forcible-detainer statute as the basis for its possession claim.  Some of its summary-judgment pleadings and
its motion to dismiss the Youngs’ cross claim also asserted the
forcible-detainer statute as a basis for possession, rent, and attorney’s fees.  A district court such as the trial court here
has no subject-matter jurisdiction to consider a forcible-detainer proceeding
or to apply the statutes or rules applicable to such proceedings.  See
It’s the Berrys, 271 S.W.3d at 770. 
And even if the issues of title and immediate possession had been so
intertwined that a justice court could not have entertained a forcible-detainer
suit—and they were not here—that fact would not have infused the district court
with jurisdiction to entertain such a suit, contrary to the Bank’s assertions
here and below.  See Breceda, 224 S.W.3d at 240; see
also It’s the Berrys, 271 S.W.3d at 770.

          What
the district court had jurisdiction
to consider, however, were claims for title and possession.  See
Breceda, 224 S.W.3d at 240; McCloud,
507 S.W.2d at 647.  This is what the Bank
also sought, both by pleading and by summary-judgment motion: an ultimate adjudication
of the validity of the foreclosure (and thus title) and of possession.  The trial court rendered judgment declaring
that the foreclosure was valid, that the substitute trustee’s deed from the
foreclosure sale would not be set aside, and thus that the Bank have immediate
possession of the property.  The court
did use the term “immediate,” but it was obviously awarding possession based on
its substantive holding adjudicating title in the Bank.  All of this the trial court had jurisdiction
to do.  The trial court also awarded
rent, but this claim did not fall within the exclusive jurisdiction of the
justice court.  See Tex. Prop. Code Ann.
§ 24.008; Tex. R. Civ. P. 738.  And although the statute allowing the award
of attorney’s fees in a forcible-detainer could not support the court’s award
of attorney’s fees in this suit,[2] the Bank’s summary-judgment
motion alleged other bases in support of its claim for attorney’s fees.

          Simply
put, the Bank’s forcible-detainer pleadings and summary-judgment grounds that
were outside the court’s jurisdiction did not preclude the court from rendering
judgment on the Bank’s other claims and grounds that were within its
jurisdiction.  We overrule issue one.

SUMMARY JUDGMENT

          In
issues two and four, the Youngs contend that the trial court erred in rendering
summary judgment for the Bank.

A.      Attorney’s Fees

          Under issue two, the Youngs argue that
the trial court erred in awarding attorney’s fees to the Bank for two reasons:
(1) there was no legal basis to support the award and (2) alternatively, a fact
issue existed on the reasonableness and amount of fees.

          “Texas has long followed the ‘American
Rule’ prohibiting fee awards unless specifically provided by contract or
statute.”  MBM Fin’l Corp. v. Woodlands Op. Co., L.P., 292 S.W.3d 660, 669
(Tex. 2009).

          The
Bank’s “live” pleading sought attorney’s fees under the note, Texas Civil
Practice and Remedies Code section 38.001,[3]
and the Declaratory Judgment Act.[4]  The Bank moved for summary judgment on its
claim for attorney’s fees based on the forcible-detainer statute,[5]
the note, and the Declaratory Judgment Act. 
The Youngs challenge all bases for attorney’s fees alleged by petition
or summary-judgment motion.

          The
Bank’s live pleading alleged the following claim for “declaratory
judgment/possession”:

[A]s the owners of the Property, [the Bank] is
entitled to possession of the Property. 
[The Bank] gave [the Youngs] written notice to turnover the Property,
but [they] have [failed to do] so.

[The Bank] is entitled to a declaratory judgment
declaring that the foreclosure sale on March 4, 2008 was a valid foreclosure
sale under its Deed of Trust and declaring that the [Youngs] relinquish
possession of the Property.

[The Bank] is entitled to a writ of possession
granting it possession in the Property.

By its pertinent summary-judgment motion, the Bank
sought a declaration that the foreclosure was valid, a determination that title
was thus vested in the Bank, and a writ of possession.  

          On
appeal, the Bank describes its claims as being in the nature of trespass to try
title.  We agree: the Bank sought by
declaration the same things available in a trespass-to-try-title action.  The Declaratory Judgment Act does not support
the award of fees in this situation.  See, e.g., Martin v. Amerman, 133 S.W.3d 262, 267 (Tex. 2004); Southwest Guar. Trust Co. v. Hardy Rd. 13.4
Joint Venture, 981 S.W.2d 951, 956 (Tex. App.—Houston [1st
Dist.] 1998, pet. denied).  And for the reasons discussed above, the
forcible-detainer statute cannot support fees, either.[6]  

          The only remaining basis that the Bank’s motion alleged in
support of its claim for attorney’s fees was the note.  The note provided:

[I]n the event default is made in the prompt
payment of this note when due or declared due, and the same is placed in the
hands of an attorney for collection, or
suit is brought on same, or the same is collected through Probate,
Bankruptcy or other judicial proceedings, then the makers agree and promise to pay a reasonable amount, not less than
Ten percent (10%) additional on the amount of principal and interest then
owing, as attorney’s fees.

(Emphasis added.) 


          “Texas
courts do not regard agreements to pay attorney’s fees based on a percentage of
the unpaid balance and interest on a promissory note as absolute promises to
pay the contractual amount, but as contracts to indemnify the holder of the
note for attorney’s expenses actually incurred in collecting the principal and
interest on the note.”  F.R. Hernandez Constr. & Supply Co. v.
Nat’l Bank of Commerce of Brownsville, 578 S.W.2d 675, 676 (Tex.
1979).  “Consequently, the obligor of the
note can challenge the reasonableness of contractual attorney’s fees.”  Id.  To do so, however, “the obligor must first
plead and prove that the contractual fee is unreasonable” and “must also prove
a lesser amount that is reasonable under the circumstances.”  Id.
at 677.

          We
begin with the Bank’s summary-judgment grounds relevant to attorney’s fees on
the note.  The Bank did not seek the 10 percent minimum allowed
by the note’s quoted provision, with reasonable fees above that percentage.  Rather, for
all three bases alleged in support of fees, the Bank sought only reasonable
and necessary fees actually incurred, not a contractual percentage of the
note’s remaining value.  The fact that 10
percent of the loan amount at time of foreclosure was $54,500, but that the
Bank sought only the $26,424.14 that Eisen had actually incurred, reveals that
the Bank was not invoking the 10-percent provision by its motion.  We strictly construe a summary-judgment
motion’s grounds against the movant.  See Nexen Inc. v. Gulf Interstate Eng’g Co.,
224 S.W.3d 412, 424 n.14 (Tex. App.—Houston [1st Dist.] 2006, no pet.). 
Accordingly, we hold that the Bank’s summary-judgment motion did not seek
fees under the note’s 10-percent provision, but instead sought only the Bank’s “reasonable”
fees.

          Against this backdrop, the Youngs argue on appeal that

the Bank has already
foreclosed, bid the full amount due, and extinguished the note.  Accordingly, the Bank amended its pleadings
and dropped the suit on the note.  The
Bank did not obtain a judgment on the note. 
This allegation does not support an award of attorney’s fees.

 

The Youngs also argue that fact issues on attorney’s
fees exist because, among other things, Eisen’s “affidavit does not . . . break
out time [spent] prior to foreclosure from time [spent] after the foreclosure,”
and they urge that “the Bank bid the full debt at the time of the foreclosure,
presumably including prior attorney’s fees.” 
Given the totality of the Youngs’ challenges, we liberally construe
their argument that the note could not support any fees because the Bank had abandoned its claim on the note as
including an argument that the note could not support at least some of the fees that the Bank sought because the Bank had
abandoned its claim on the note.  See Tex.
R. App. P. 38.1(f), 38.9; Sterner
v. Marathon Oil Co., 767 S.W.2d 686, 690 (Tex. 1989) (“[I]t is our practice
to construe liberally points of error in order to obtain a just, fair and
equitable adjudication of the rights of the litigants.”).

          The
Bank’s summary-judgment evidence showed that the note was payable to it; that
the note and its extensions were secured by a deed of trust, on which the Bank
was the holder; that the Youngs defaulted on the note; that the Bank foreclosed
on the property under the deed of trust; that the Bank purchased the property
at the foreclosure sale; that the Bank bid the full remaining debt of $545,000
at the foreclosure; and that Eisen was employed “to collect the claims on which
this suit is based” and to foreclose on the property, which she did.  The Bank produced the note itself.  The Bank’s original counterclaim alleged a
suit on the note, but that claim was nonsuited soon after foreclosure.  The Bank also tendered Eisen’s affidavit in
support, which recited:

          . . . Since the foreclosure, I have incurred attorney’s fees relating to
the following: [listing 15 activities occurring post-foreclosure].

 

          I have been a practicing attorney in
Harris County, Texas for twenty-two years. 
My customary hourly rate is $300.00, which is, in my opinion, a reasonable
attorneys [sic] fee.  Per my agreement
with [the Bank], the fees have been charged for my time at $275.00 per hour,
which is a reasonable fee for handling this matter.  I and
paralegals in my office have incurred (including anticipated time for the summary
judgment hearing) 98.25 hours of time for a total fee of $25,874.14.  Additionally, I have incurred expenses in the
amount of $3,779.64.  The total fees and expenses are $26,424.14,
which are reasonable expenses for fees for this matter.  All of these fees have been necessary.

 

. . . .

 

(Emphasis added.) 


          Eisen’s affidavit listed only
post-foreclosure activities for which attorney’s fees had been incurred, most of
which were patently unrelated to the nonsuited claim to collect on the note,
but then listed “total fees and expenses” of a fixed amount.  This discrepancy rendered the affidavit
unclear.  See Tex. R. Civ. P. 166a(c)
(requiring that affidavit of interested party and of expert be clear, positive,
direct, otherwise credible, free from contradictions and inconsistencies, and
readily controvertible); compare also
Nguyen v. Smith & Lamm, P.C., 714 S.W.2d 144, 148 (Tex. App.—Houston [1st Dist.] 1986, no writ)
(“[T]he reasonableness of attorney’s fees is a question of fact and must be supported
by competent [summary-judgment]
evidence.”) (emphasis added).  This is
important because the claim for collection on the note was nonsuited after
foreclosure and the note’s relevant provision allowed for recovery of only
those reasonable fees related to the note’s collection.  Cf.
Estate of Montague v. Nat’l Loan Investors, L.P., 70 S.W.3d 242, 251-52
(Tex. App.—San Antonio 2001, pet. denied) (in suit on note containing
10-percent clause like that in instant case, except for omission of “not less than”
qualifier, holding that note’s holder was able to recover reasonable attorney’s
fees exceeding contractual percentage under same logic as in F.R. Hernandez Construction, which allows
for recovery of expenses actually
incurred in collecting on note).  We hold that the
Bank did not conclusively prove its entitlement to obtain all of the attorney’s
fees that it sought on the basis of the note—whether those fees sought were for
work already rendered or for appeal.

          Given
our holdings above, we need not reach the Youngs’ remaining arguments
concerning fees.  We sustain the
challenge under issue two regarding the award of attorney’s fees. 

B.      Rent

          Also
under issue two, the Youngs argue that the trial court erred in rendering
summary-judgment for the Bank on its claim for rent for two reasons.  

          The
Youngs first argue that because “the rent [claim] was merely ancillary to a
forcible detainer suit over which the trial court had no jurisdiction,” the
award for rent “should be set aside and that claim should be dismissed.”  We have already rejected this argument in our
jurisdictional discussion.  See Tex.
Prop. Code Ann. § 24.008; Tex. R.
Civ. P. 738.  

          We
overrule this argument under this portion of issue two.

          The
Youngs next contend that a fact issue existed on the amount of rent.  The sole evidence of reasonable rent was the
affidavit testimony of Allen Wilkenfeld, the Bank’s vice president.  That testimony, in its entirety, was:
“Pursuant to Tex. Prop. Code § 24.0051 [sic], [the Bank] is entitled to receive
reasonable rent for [the] Youngs’ holding over and refusal to vacate the
property.  A reasonable monthly rent for
the Property would be $4,500 per month.” 
The Youngs contend that “[a] pure conclusion or ipse dixit such as this is no evidence whatsoever and will not
support a judgment even when admitted without objection.”  We agree. 
Conclusory statements by interested witnesses will not support traditional
summary judgment.  See, e.g., Tex. R. Civ. P. 166a(c); Rizkallah v. Conner, 952 S.W.2d 580,
587 (Tex. App.—Houston [1st Dist.] 1997, no pet).  This is true of both legal and factual
conclusions.  See Rizkallah, 952
S.W.2d at 587. 
The first sentence of Wilkenfeld’s affidavit was nothing more than a
mere legal conclusion; it was also legally incorrect.  See
id.  The second sentence was a
factual conclusion, which is “not proper as summary judgment proof” because it
“does not provide the underlying facts to support the conclusion.”  Id.  Conclusory statements such as these, by an
interested witness such as Wilkenfeld, cannot support summary judgment.  See id.

          We sustain this argument under this
portion of the Youngs’ issue two.

C.      Wrongful Foreclosure and Declaratory Relief

          In
their issue four, the Youngs complain that the trial court erred in “granting a
take-nothing judgment on [their] claim for wrongful foreclosure and in granting
a declaratory judgment” that the foreclosure was valid.  In support, the Youngs argue that the Bank
was not entitled to no-evidence summary judgment on the three elements of a
wrongful-foreclosure suit: (1) a defect in the foreclosure sale proceedings;
(2) a grossly inadequate selling price; and (3) a causal connection between the
defect and the grossly inadequate selling price.  See Sauceda
v. GMAC Mortg. Corp., 268 S.W.3d 135, 139 (Tex. App.—Corpus Christi 2008, no pet.).

          The
Youngs’ “Cross Action Against Defendant” asserted that “[t]his is a suit for
wrongful foreclosure sale posted under an unlawful declaration of default . . .
,” but the basis for the claim was that the foreclosure was void for having
occurred at a time when an automatic bankruptcy stay was allegedly in
effect.  The Bank moved for no-evidence
summary judgment on this cross claim on the bases, among others, that no
evidence showed that (1) an automatic bankruptcy stay was in effect when
foreclosure occurred or (2) the foreclosure was void.  Although the clerk’s record does not contain
a response by the Youngs to this motion, their earlier responses to the Bank’s
other summary-judgment motions (1) described their cross claim as an
“affirmative defense,” (2) alleged that the foreclosure was void for having
occurred during the bankruptcy stay, and (3) attached the bankruptcy court’s
“Order Declaring That No Automatic Stay Exists,” which mistakenly declared both
that “no stay is imposed” and that “the bankruptcy stay is in effect.”  Of course, in reply the Bank produced the
corrected bankruptcy court order declaring that the stay was not in effect on the date of
foreclosure.  

          It is surely for this reason that the Youngs
do not reassert on appeal their sole argument and claim below, which was that the
alleged bankruptcy stay voided the foreclosure sale.  Rather, they contend that the foreclosure was
wrongful because the Bank did not give sufficient notice, the price was grossly
inadequate, and the lack of sufficient notice was presumed to have contributed
to an inadequate price.  These matters
were not alleged as a basis for their cross claim, and they are non-responsive
to the summary-judgment grounds attacking that claim.  Additionally, the Youngs did not raise new
bases for their cross claim in any summary-judgment response, meaning that no
new bases for the claim could have been tried by consent.  See Via
Net v. TIG Ins. Co., 211 S.W.3d 310, 313 (Tex. 2006) (“When [the
plaintiff-nonmovant] asserted the discovery rule for the first time in its
summary judgment response, [the defendant-movant] had two choices: it could
object that the discovery rule had not been pleaded, or it could respond on the
merits and try the issue by consent.”). 
Finally, the evidence of fair-market value on which the Youngs rely on
appeal is an appraisal attached to a response to a motion separate from the
summary-judgment pleadings.  They did not
point to this evidence in any summary judgment response.  See
Plotkin v. Joekel, No. 01-06-00624-CV, 2009 WL 3152093, at *15 & n.12 (Tex.
App.—Houston
[1st Dist.] 2009, pet. denied) (holding that nonmovant must point to evidence
that it contends defeats no-evidence summary judgment).  

          We overrule issue four.

SANCTIONS

          In
issue three, the Youngs argue that the trial court erred in awarding sanctions in
the amount of $25,000 against them.

A.      Procedural Background

          The
trial court’s final judgment of July 31, 2008 awarded “immediate possession” to
the Bank and ordered that a writ of possession issue “upon entry of this
judgment.”  The Youngs have never
superseded that judgment.  The trial
court denied the Youngs’ motion for new trial on October 7, 2008.  

          The
writ of possession was served on October 13, 2008 and ordered the Youngs to
vacate by the next afternoon.  On October
15, 2008, the Youngs moved for emergency relief in this Court, which motion was
denied the same day.  That day or the
next, the writ was executed, and the Youngs’ furniture was removed from the
property to a storage facility.  On October
16, 2008, the Youngs moved the trial court to vacate the writ of possession, to
stay further proceedings, and to have the Bank sanctioned.  They urged that the writ had issued
prematurely, in violation of Texas Rule of Civil Procedure 627.  See Tex. R. Civ.
P. 627.  The
Youngs sought an order vacating the writ of possession, an order to return
their property to the house, an order that no execution could issue until 30
days from the overruling of the motion for new trial (i.e., until just over two weeks from the motion’s scheduled
hearing), and sanctions against the Bank and Eisen for their conduct in
wrongfully taking the Youngs’ property.  

          The
Bank responded to the motion, asserting, among other things, that the writ was
properly issued under the forcible-detainer statute, which allows a writ’s issuance
if the judgment has not been superseded within 10 days.  The Bank moved for sanctions in the amount of
$25,000, representing “both expenses from potential mechanics &
materialmen’s liens and attorney’s fees.” 


          The
trial court heard both motions on October 20, 2008, four or five days after the
writ’s execution.  The Bank put on
testimony of Wilkenfeld in support of its motion.  The trial court denied the Youngs’ motion,
granted the Bank’s motion for sanctions, and awarded sanctions against the
Youngs for $25,000, reciting that the Youngs’ motion was “without merit and
frivolous.”  The order did not specify
under what authority—Texas Rule
of Civil Procedure 13 or Texas Civil Practice and Remedies Code chapter 10—sanctions were being imposed.  See Tex. Civ.
Prac. & Rem. Code Ann. §§ 10.002, 10.004 (Vernon 2002); Tex. R. Civ.
P. 13.  Nor did the
order include findings as to what the bases of the sanction were.  See Tex. Civ.
Prac. & Rem. Code Ann. § 10.005 (Vernon 2002) (requiring
court to describe in sanctions order sanctionable conduct and basis for
sanction); Tex. R. Civ. P. 13 (requiring that sanctions order state particulars of good cause supporting
sanctions).  However, the
Youngs do not complain of these omissions on appeal.  See
Walling v. Metcalfe, 863 S.W.2d 56, 58 (Tex. 1993) (“We have held
repeatedly that the courts of appeals may not reverse the judgment of a trial
court for a reason not raised in a point of error.”). 

B.      The Law

          We review
a trial court’s imposition of sanctions for an abuse of discretion. Low v. Henry, 221 S.W.3d 609, 614 (Tex. 2007).
 In reviewing the sanctions order, we
review the entire record to determine whether the trial court abused its
discretion.  Am. Flood Research, Inc. v. Jones, 192 S.W.3d 581, 583 (Tex. 2006).

          Under rule 13, the signatures of attorneys or parties
“constitute a certificate by them” that they have read the pleading, motion, or
other paper that they are filing and that, to the best of their knowledge,
information, and belief and after reasonable inquiry, “the instrument is not
groundless and brought in bad faith or groundless and brought for the purpose
of harassment.”  Tex. R. Civ. P. 13.  “Courts
shall presume that pleadings, motions, and other papers are filed in good
faith.”  Id.  A pleading is
“groundless” when it has “no basis in law or fact and [is] not warranted by
good faith argument for the extension, modification, or reversal of existing
law.”  Id.  To show bad faith, the
movant must show conscious wrongdoing for a dishonest, discriminatory, or
malicious purpose.  Mattly v. Spiegel, Inc., 19 S.W.3d 890, 896 (Tex. App.—Houston [14th Dist.] 2000, no pet.).  Rule 13 sanctions may be imposed only for
good cause.  Tex. R. Civ. P. 13.  

          “If a pleading, motion or other paper is signed in
violation of [rule 13], the court, upon motion or upon its own initiative,
after notice and hearing, shall impose an appropriate sanction available under [Texas
Rule of Civil Procedure] 215 upon the person who signed it, a represented
party, or both.”  Id.  Rule 215, which concerns
abuse of the discovery process, allows a trial court to assess such sanctions
“as are just” against a party, which may include discovery expenses and “the
reasonable expenses, including attorney fees, caused by the failure” to obey a
discovery order.  Tex. R. Civ. P. 215.2(b). Rule 13 requires that sanctions be
“appropriate,” which is the equivalent of “just” under rule 215.  GTE Communications
Sys. Corp. v. Tanner, 856 S.W.2d 725, 731 (Tex. 1993).  A two-part test determines whether a sanction
is just: (1) there must be a direct nexus between the improper conduct and the
sanction imposed and (2) the award must not be excessive.  Low,
221 S.W.3d at 614; TransAmerican Natural
Gas Corp. v. Powell, 811 S.W.2d 913, 917 (Tex. 1991).

          Under chapter 10, 

[t]he signing of a pleading or motion . . .
constitutes a certificate by the signatory that to the signatory’s best
knowledge, information, and belief, formed after reasonable inquiry:

 

          (1)     the pleading or motion is not being
presented for any improper purpose, including to harass or to cause unnecessary
delay or needless increase in the cost of litigation;

. . .

Tex. Civ. Prac. & Rem. Code Ann. §
10.001(1) (Vernon 2002).  When a party
prevails on a motion for sanctions under section 10.001, the court may award “the
reasonable expenses and attorney’s fees incurred in presenting or opposing the
motion, and if no due diligence is shown the court may award to the prevailing party
all costs for inconvenience, harassment, and out-of-pocket expenses incurred or
caused by the subject litigation.”  Id. § 10.002(a), (c) (Vernon 2002).  The sanction “must be limited to what is
sufficient to deter repetition of the conduct or comparable conduct by others
similarly situated” and may include, among other things, “an order to pay to
the other party the amount of the reasonable expenses incurred by the other
party because of the filing of the pleading or motion, including reasonable
attorney’s fees.”  Id. § 10.004(b), (c) (Vernon 2002). 


 

C.      Discussion

          Because
forcible-detainer rules have no application in a district court proceeding, the
Youngs were correct that a writ of possession could not issue 10 days after
judgment.  Compare Tex. R. Civ. P. 632 and
627 (providing for 30 days after denial of new trial motion for
execution writ, including writ of possession, to issue if judgment is not
superseded) with Tex. Prop. Code Ann. § 24.0061(b) (Vernon 2000), id. § 24.007 (Vernon 2000), and
Tex. R. Civ. P. 748 (providing for shorter time to
issue unsuperseded writ of possession in forcible-detainer suits in justice
court).  Nonetheless, it was not an abuse
of discretion for the trial court to have found that their motion was
frivolous.  The motion was not filed in a
vacuum: rather, the court had before it evidence of a long history of the
Youngs’ actions that could reasonably have been interpreted as delay tactics,
resulting in expenses and fees to the Bank.[7]  Moreover, the Youngs had already been evicted
for four or five days by the time that their motion to vacate the writ of
possession was heard, and by that motion, they sought to regain possession of,
and to return their possessions to, the property—in which they had been living without paying rent until the final
judgment in this case and without paying insurance or certain property taxes—for
only around two more weeks.  The trial
court was well within its discretion to conclude that the request to vacate the
writ at this point and under these circumstances was frivolous and, at the very
least, indicated an “improper purpose, including to harass or to cause
unnecessary delay or needless increase in the cost of litigation.”  Tex. Civ. Prac. & Rem. Code Ann.
§ 10.001(1); cf. New York Underwriters Ins. Co. v.
State Farm Mut. Auto. Ins. Co., 856 S.W.2d 194, 205
(Tex. App.—Dallas 1993, no writ) (in considering whether filing violates rule
13, trial court may consider acts or omissions of party or counsel, not merely legal
merit of pleading or motion).

          Alternatively,
the Youngs contend that the sanctions amount was an abuse of discretion because
there was no rational relationship between the award and the filing of the
frivolous motion.  On this record, with
this order, and in light of the Youngs’ appellate challenges, we disagree.

          The
sole basis recited in the order that could support sanctions was the Youngs’ filing
of a frivolous motion.  As noted above,
the order did not contain any further findings, but the Youngs did not complain
below, and do not complain here, of this defect.  See
Walling, 863 S.W.2d at 58.  The
reason for findings in a sanctions order is, in part, to enable the appellate
court to review the order in light of the facts found by the trial court.  See GTE Communications
Sys. Corp. v. Curry, 819 S.W.2d 652, 654 (Tex. App.—San Antonio 1991, orig. proceeding).  “Without
the findings required by rule 13, effective review of the sanctions is
unavailable because the sanctioned party would be unable to overcome the
presumption that the trial court found necessary facts in support of its
judgment.”  Id.

          It is
true that the Bank did not prove up its attorney’s fees and expenses incurred in
defending against the frivolous motion; in fact, Wilkenfeld testified that he
did not know even the amount of attorney’s fees that the Bank had incurred
since final judgment.  The only relevant evidence
that the Bank adduced was that it had incurred attorney’s fees in all of its efforts to recover the
property—appearing to include, as the
Youngs correctly point out, those fees already awarded in the final judgment—and “expenses on the property”—which included between $17,200 and $19,000
to pay off cleaning expenses that the Youngs had incurred after Hurricane Ike
and before their motion to vacate, without the Bank’s permission, while they
were tenants at sufferance after the March foreclosure.  Wilkenfeld testified that the aggregate
amount of these various fees and expenses “equal[ed] or exceed[ed] 25 thousand
dollars.”  There was also evidence at the
hearing that the Youngs did not pay certain property taxes while they occupied
the property, and in the the summary judgment evidence—which the court could have considered when it
took judicial notice of its file at the hearing—that the Youngs had not paid $11,000 and about $8,000 for 2006 and 2008
property taxes, respectively.  The Bank
also produced evidence that it had had to insure the property because the
Youngs did not do so during their possession. 

          Sanctions
under rule 13 must have a reasonable relationship to the offending
conduct.  See Low, 221 S.W.3d at 614 (requiring direct nexus between improper conduct and
sanction imposed under rule 13). 
Likewise, “[t]he determination of the amount of a penalty to be assessed
under Chapter 10, which is not limited to attorney’s fees and costs, should
nevertheless begin with an acknowledgment of the costs and fees incurred
because of the sanctionable conduct” because “[t]his provides a monetary
guidepost of the impact of the conduct on the party seeking sanctions and the
burdens on the court system.”  Low, 221 S.W.3d at 621; see also Tex. Civ. Prac. & Rem. Code Ann. §
10.004(b), (c) (providing that sanction “must be limited to what is sufficient
to deter repetition of the conduct or comparable conduct by others similarly
situated” and may include, among other things, “an order to pay to the other
party the amount of the reasonable expenses incurred by the other party because
of the filing of the pleading or motion, including reasonable attorney’s fees.”).  However, sanctions under section 10.004 are
not limited to attorney’s fees and costs. 
See Low, 221 S.W.3d at 621.  They may, for example, be assessed “to
deter repetition of the conduct.”  Tex. Civ. Prac. & Rem. Code Ann. § 10.004(b).  

          Because
the order contained no findings, and given the lengthy history that the court
could have reasonably construed as delay tactics by the Youngs (including the
filing of the very motion for which they were sanctioned), the trial court may
have found that the imposition of $25,000 was necessary to deter future delay
tactics like the frivolous motion to vacate. 
In support of such a finding, the court could also have considered that the
sanctionable motion sought to return the Youngs and their possessions to the
property for only a few weeks, with the result that the Youngs would continue
possession even though they had not paid rent, certain property taxes, or
insurance.  Given the lack of findings,
the lack of appellate complaint about the findings’ omission, and the evidence
before the court, we cannot say that the trial court acted outside its
discretion in assessing a $25,000 sanction, even though the Bank did not prove
fees and expenses incurred in defending the motion to vacate.

          We overrule
issue three.




 

CONCLUSION

          We reverse
those portions of the final judgment awarding rent and any attorney’s fees to
the Bank.  We affirm the judgment in all
other respects.  We further affirm the sanctions
order.  We remand the case for further
proceedings not inconsistent with this opinion.

 

 

                                                                   Sherry
Radack

                                                                   Chief
Justice 

 

Panel
consists of Chief Justice Radack and Justices Alcala and Higley.











[1]           Mynde
S. Eisen, counsel here and below for Texas First Bank, was a party to the trial
court’s judgment.  She and Texas First
Bank have filed a joint appellees’ brief. 
However, the Youngs raised no challenges to those portions of the
judgment concerning Eisen.  Accordingly,
Eisen is not an appellee in this appeal. 
See Showbiz Multimedia, L.L.C. v.
Mountain States Mortgage Ctrs., Inc., No. 01-07-00810-CV, 2009 WL 3248211,
at *1 n.3 (Tex. App.—Houston [1st Dist.] Oct. 8, 2009, no pet.).

 





[2]        See Tex. Prop. Code Ann. § 24.006(a) (Vernon
2000).  

 





[3]           See Tex.
Civ. Prac. & Rem. Code Ann. §
38.001 (Vernon 2008).

 





[4]           See
id. § 37.009 (Vernon 2008).

 





[5]           See Tex. Prop. Code Ann. §
24.006 (Vernon 2000).





[6]           The
Bank did not move for summary judgment under section 38.001 on its claim for attorney’s
fees.  See, e.g., Sci. Spectrum,
Inc. v. Martinez, 941 S.W.2d 910, 912 (Tex. 1997) (“Because [the movant]
did not raise this ground in its [summary-judgment] motion, we hold that [it]
is not entitled to a summary judgment on this claim.”).  Nonetheless, even if the Bank had, that
provision could not have supported the award because the Bank nonsuited its collection
suit on the note before final judgment.  See Tex.
Civ. Prac. & Rem. Code Ann. §
38.001 (Vernon 2008); Green Int’l, Inc.
v. Solis, 951 S.W.2d 384, 390 (Tex. 1997) (“To recover attorney’s fees
under section 38.001 a party must (1) prevail on a cause of action for which
attorney’s fees are recoverable and (2) recover damages.”).





[7]           At the Youngs’ request, the trial
court took judicial notice of its file during the sanctions hearing, which
included summary-judgment evidence showing these things.